# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN M. DVORAK,
       Plaintiff,

    v.                                                           Case No. 07-C-181

RACINE COUNTY JAIL SHERIFF,[1]
DR. PARIK, DR. PATEL,SGT. WILLIS,
DEP. SCHMIDT, PSYCH INTERN "KELLY,"
PSYCHOLOGIST ELIZABETH FALCON,
DR. OKELLEHY, PSYCH INTERN "SHELBI,"
PSYCH INTERN "KEVIN,"
HEAD COOK "SHERRI," DEP. "ETTENBERG,"
C.O. "McCORD," C.O. "CHAVEZ" and
C.O. JOHN DOE "ROOKIE,"
       Defendants.

## DECISION AND ORDER

On February 26, 2007, plaintiff John Dvorak, a state prisoner, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Thereafter, on April 6, 2007, plaintiff filed an amended complaint which is the operative complaint in this case. This matter comes before the court on the plaintiff's petition to proceed in forma pauperis.

The plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. 28 U.S.C. § 1915(a)(2). The court then assesses and, when funds

---

[1] Although the caption lists the "Racine County Jail" as a defendant, the portion of the complaint which asks the plaintiff to identify each named defendant identifies the Sheriff of the Racine County Jail as the defendant rather than the jail itself. Therefore, the case caption has been amended to reflect that fact.

exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint. Id.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. By order of February 28, 2007, it was determined that the prisoner did not have the assets to pay the initial partial filing fee and plaintiff was granted a waiver of that fee.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976),

construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was visited upon him by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47); see also Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." Thomson, 362 F.3d at 970.

## I. ALLEGATIONS

The plaintiff is currently an inmate at the Douglas County Jail, but his allegations relate to the period that he was at the Racine County Jail ("RCJ").[2] The rather lengthy complaint identifies his interactions with each named defendant. A reading of all of the allegations

---

[2] The plaintiff does not specify whether he is a pretrial detainee or a convicted prisoner. The court's own research shows that there are two open criminal cases pending against him in Racine County: State of Wisconsin v. John M. Dvorak, 2006CF001219, and State of Wisconsin v. John M. Dvorak, 2006CF001220. Both of these cases stem from offenses which allegedly occurred in September 2006. Thus, it appears that Mr. Dvorak is a pretrial detainee at the Racine County Jail.

suggests that he is advancing five types of claims: (1) that various defendants were deliberately indifferent to his medical needs; (2) that the conditions of his confinement violated his constitutional rights; (3) that his legal mail was opened by RCJ; (4) that he was denied access to courts; and (5) that staff that excessive force was used against him.

**A.     Medical Care Allegations**

The plaintiff alleges that while he has been confined at RCJ, he has not been receiving mental health treatment for his bi-polar condition. He contends that he "hallucinate[s]" has "anxiety and panic attacks" is "in competency proceedings" and wants "to kill others and [him]self." (Complaint, Statement of Claim ¶ 12.) He alleges that the Sheriff does not allow him to have medication while he is at the jail. (Complaint, Statement of Claim ¶ 1.) Drs. Parik and Patel apparently cut his medication in half upon his arrival at the jail. (Complaint, Statement of Claim ¶¶ 4 and 5.) "Psych. Interns" Kelly and Shelbi and Psychologist Elizabeth Falcon refuse to see the plaintiff and either give him the wrong medication or placebos. (Complaint, Statement of Claim ¶¶ 4(b) - 5(a).) He also alleges that Dr. Okellehy "refuses to give [him his] prescriptions as ordered by [his] long-term physician" and "refuses to treat pinched nerve in back and atrophy which he diagnosed." (Complaint, Statement of Claim ¶ 5(c).) At one point, the plaintiff apparently tried to "rip [his] veins out of [his] arm with [his] fingernails" and C.O. McCord refused to call for medical assistance. (Complaint, Statement of Claim ¶ 9.)

The complaint further states that C.O. Chavez and rookie officer John Doe left him "hanging by [his] neck in [his] cell while they ate dinner." (Complaint, Statement of Claim ¶ 11.) The towel (from which the plaintiff was apparently hanging) "broke when [plaintiff] went into convulsions." As a result, plaintiff split his eye open which required stitches but he was not any given medical treatment. (Complaint, Statement of Claim, ¶ 11.) Defendant Willis

"refuses to let him see Drs." (Complaint, Statement of Claim ¶¶ 12 and 13.) Finally, plaintiff alleges that he has one-half of a tooth but the jail refuses to fix it. (Complaint, Additional Statement of Claim ¶ 9.)

**B.     Allegations Concerning Jail Conditions**

The plaintiff also complains about the conditions of his confinement. In particular, he alleges that the Sheriff refuses to substitute foods he is allergic to with other food and that head cook "Sherri" gives him less food than everyone else, refuses to give him "adequate food," provides him with the "same food day after day" and gives him "lunches that are mixed together like casserole and [his] bread is wet - no butter or other condiments - no juice, one-half bowls of cereal - toast stuffed in oatmeal - rock hard bread from sitting out for hours. Cold food that should be hot." (Complaint, Statement of Claim ¶¶ 1, 7 and 12.) In addition, defendant Ettenberg "refuses to feed [him] half the meal he is supposed to get." (Complaint, Statement of Claim ¶ 8.)

While held in suicide watch, his cell had a broken window and he did not have access to a television, canteen, books, paper, hygiene or clothing. (Complaint, Statement of Claim ¶ 12 and Additional Statement of Claim ¶ 11.) In addition, he was subject to constant "bright lights on his face 24 hrs a day." (Id.) The complaint further alleges that Sgt. Willis shut off the water to his cell as punishment for not cleaning and he went without water for days. (Complaint, Additional Statement of Claim ¶ 3.)

**C.     Allegations Concerning the Law Library and Legal Mail**

The plaintiff states that the law librarian Ebert refuses to let him use the law library. (Complaint at ¶ 6.) He maintains that he desperately needs to use the law library because he doesn't "know all grievances [he is] allowed and [he doesn't] know Fed. R. Civ. P." (Complaint at 14.) He insists that he is unable to respond to the court unless he can get into

the law library.  (Id.)  In addition, the plaintiff asserts that his "legal mail is opened and read." (Complaint, Statement of Claim ¶ 3.)

**D.     Allegations Concerning Excessive Force**

According to the plaintiff's allegations, defendant Schmidt threw a full container of milk at the plaintiff which hit him in the head and that Sgt. Willis has "pepper sprayed [him] for no reason on multiple occasions." (Complaint, Statement of Claim ¶¶ 2 and 10.) He explains that one day, Sgt. Willis "pulled down [his] covers pepper sprayed [him] in the face, genitals and butt.  Then said 'How you like that[?]'" (Complaint, Statement of Claim ¶ 10.)

All of the plaintiffs are sued in their individual and official capacities.  As relief, plaintiff seeks $5.5 million dollars in damages (punitive and compensatory), access to the law library, a court order giving him his medication as prescribed by his long term psychiatrist" and he wants "all defendants fired."

## II.  ANALYSIS

**A.     Medical Care Claims**

As I read the plaintiff's complaint, he alleges that he was denied medical care in the following circumstances: (1) various RCJ defendants refused to provide him with the medication and/or the amount of medication he needs for his mental health condition; (2) defendants Chavez and rookie officer John Doe provided inadequate care in connection with his suicide attempt; (3) Dr. Okellehy refused to treat his pinched nerve and atrophy; (4) C.O. McCord refused to provide plaintiff medical treatment when he tried to harm himself; and (5) defendants refused to provide plaintiff with necessary dental care.

When considering a pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used.  Whiting v. Marathon Co. Sheriff's Dep't, 382 F.3d 700, 703 (7th Cir. 2004).  Deliberate indifference to the serious

medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is proscribed by the Eighth Amendment. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle, 429 U.S. at 104-05; Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000). The Court of Appeals for the Seventh Circuit has held that "dental care is one of the most important medical needs of inmates." See Wynn v. Southward, 251 F.3d 588, 593 (7th Cir.2001)(quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.1980)).

Based upon the standards set forth above, I am persuaded that the plaintiff has stated cognizable constitutional claims against the identified defendants based on the adequacy of the medical care he received at RCJ. However, the only allegation against defendant "Psych Intern Kevin" is that he "repeatedly lies to [plaintiff] about anything." (Complaint, Statement of Claim ¶ 5(b).) Even liberally construed, this allegation is not enough to establish that this defendant was deliberately indifferent to any of plaintiff's medical needs. As a result, defendant Psych Intern Kevin will be dismissed from the action.

**B.    Jail Conditions Claims**

Because the plaintiff is a pretrial detainee, claims he presents concerning jail conditions arise under the Due Process Clause of the Fourteenth Amendment as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment. Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002). However, this distinction is immaterial since Eighth and Fourteenth Amendment conditions of confinement claims are analyzed

under the same legal standard. Whiting, 382 F.3d at 703; see also Washington v. LaPorte County Sheriff's Dep't, 306 F.3d 515, 517 (7th Cir. 2002) ("[T]he protections for pretrial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous.")(internal citation and quotations omitted).

Plaintiff submits that: (1) the RCJ Sheriff refused to substitute food he was allergic to with other food; (2) head cook "Sherri" and defendant Ettenberg do not give him enough food and head cook Sherri gives him unacceptable food; (3) his cell had a broken window and he was not provided with amenities, hygiene supplies or clothing while he was in suicide watch; (4) he was exposed to constant illumination; and (5) Sgt. Willis shut off the water to his cell as punishment.

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The Supreme Court has stated that plaintiffs cannot litigate an overriding totality of the circumstances claim based on unrelated conditions. See Wilson v. Seiter, 501 U.S. 294, 299 (1991)(the conditions of which they complain must be grouped according to the specific human need to which they relate). Furthermore, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obligated to provide constitutionally adequate confinement." Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988).

With respect to plaintiff's claim concerning his food, some of his allegations suggest that the type of food offered by the head cook was not to his liking. For example, he contends that he didn't receive condiments or juice and that the bread was "rock hard." Such claims do not rise to the level of a constitutional violation. Id. The plaintiff also contends that the Sheriff gave him food he was allergic to (tuna) and refused to give him a substitute. In addition, he maintains that defendant head cook Sherri and Ettenberg give him half the food that is nutritionally required. Because these allegations amount to a claim that plaintiff was deprived of adequate food, he has arguably stated an Eighth Amendment claim against these defendants. See Wilson, 501 U.S. at 299.

Next, plaintiff states that while in suicide watch, he was denied various amenities like access to television, a canteen, books, and paper and that he was not given any hygiene supplies or any clothing while in suicide watch and that his cell had a broken window. Further, he maintains that Sgt. Willis shut off the water to his cell as punishment and that he went days without any water.

Conditions that create "temporary inconveniences and discomforts" are insufficient to state an Eighth Amendment claim. Adams v. Pate, 445 F.2d 105, 108-09 (7th Cir.1971). Moreover, the court of appeals has held that because drastic measures may be necessary to prevent an inmate from committing suicide, inmates under suicide watch "may be deprived not only of belts and ties, but also of pens, sheets, blankets, even clothing, for almost any object may be used to harm oneself." Myers v. County of Lake, 30 F.3d 847, 850 (7th Cir. 1994). According to plaintiff's own allegations, he was placed in suicide watch because he wanted to kill others and himself. (Complaint, Statement of Claim ¶ 12.) Under these circumstances, plaintiff's contention that he was not allowed access to a television, the canteen, books, paper, clothing or hygiene supplies, do not rise to the level of a constitutional

violation under the Eighth Amendment. In addition, given that plaintiff does not allege that he was subject to freezing conditions because of the broken window or that the faulty window in any other way deprived him of life's necessities, plaintiff's claim that his cell had a broken window does not rise to the level of a constitutional violation.

On the other hand, plaintiff's contention that he was deprived of water for days by Sgt. Willis as a punishment does suggest that he was deprived of a basic human need and, therefore, states a valid constitutional claim. Consequently, plaintiff will be allowed to proceed on this claim against Sgt. Willis.

Plaintiff also asserts that the defendants subjected him to constant illumination. An environment of constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996)(24-hour illumination by fluorescent lights not dimmed at night); King v. Frank, 371 F. Supp.2d 977, 984-85 (W.D. Wis. May 26, 2005)(a condition of confinement such as constant illumination violates the Eighth Amendment if it denies the inmate "the civilized measure of life's necessities."). In this case, the plaintiff has averred that bright lights shine in his face 24 hours a day and that he is unable to sleep. (Complaint, Statement of Claim ¶ 12.) Therefore, the plaintiff may proceed on a constant illumination claim.

**C. Legal Mail Claim**

The plaintiff argues that all of his legal mail is opened and read by the defendants. Prisoners (and pretrial detainees) have a First Amendment right to be free from certain interference with their "legal" mail. Wolff v. McDonnell, 418 U.S. 539, 577 (1974); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304, 306 (7th Cir.1993); Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir.1996); Watson v. Cain, 846 F. Supp. 621, 626 (N.D. Ill. 1993); see

also Turner v. Safely, 482 U.S. 78, 84 (1987). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. Wolff, 418 U.S. at 577; Bach v. People of State of Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974); cert. denied, 418 U.S. 910 (1974). For example, correspondence between an inmate and an attorney (even a potential attorney or legal representative) is deemed confidential and, therefore, must be opened in the presence of the inmate. Wolff, 418 U.S. at 577; Bach, 504 F.2d at 1102; Watson, 846 F. Supp. at 629, 631. Liberally construing the plaintiff's complaint, I find that he has stated an arguable legal mail claim.

### D. Access to Courts Claim

The plaintiff asserts that defendant Ebert refuses to let him use the law library and that he needs to use it to pursue his grievances and respond to the court. At present, plaintiff is proceeding pro se in three different actions.

Prisoners have a constitutional right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 821 (1977). The court finds that the complaint states an access to the courts claim. See Id.; Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006); Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006).

### E. Excessive Force Claims

Plaintiff avers that defendant Schmidt "threw and hit [him] in the head with a full milk" container and that Sgt. Willis has sprayed him with pepper spray in the face, genitals and buttocks on multiple occasions for no reason. Because plaintiff was a pretrial detainee at the time of the alleged events, his excessive force allegations are governed by the Due Process Clause. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.");

Salazar v. City of Chicago, 940 F.2d 233, 239-240 (7th Cir. 1991). However, this distinction is immaterial since deliberate indifference is the applicable standard in § 1983 cases alleging excessive force by pretrial detainees. Proffitt v. Ridgway, 279 F.3d 503, 506 (7th Cir. 2002).

The Seventh Circuit has held that in determining whether a prison official acted with deliberate indifference, a factfinder may rely on objective factors. Wilson v. Williams, 83 F.3d 870, 876 (7th Cir. 1996)(in excessive force cases, a jury may properly rely on objective factors to arrive at the determination of intent). Generally, these factors include the need for an application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, the efforts made to temper the severity of a forceful response, and the extent of the injury suffered by the prisoner. Hudson v. McMillian, 503 U.S. 1, 7 (1992); DeWalt v. Carter, 224 F.3d 607, 619 (7th Cir. 2000). With respect to the last factor, "while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimus use of physical force." Hudson, 503 U.S. at 9-10. Thus, "not every push or shove by a prison guard violated a prisoner's constitutional rights." See id. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 [2d. Cir. 1973]).

In this case, defendant Schmidt's act of hitting plaintiff in the head with a full milk container and defendant Willis' use of pepper spray on plaintiff without provocation or apparent justification go beyond a de minimus use of force and arguably constitute cruel and unusual punishment. In light of the foregoing, the court finds that plaintiff has presented facts sufficient to state a claim for excessive force against defendants Schmidt and Willis.

### III. CONCLUSION

In sum, the plaintiff may proceed on his medical care claims against the RCJ Sheriff, Drs. Parik, Patel and Okellehy, "Psych. Interns" Kelly and Shelbi, Psychologist Elizabeth Falcon, C.O. McCord, C.O. Chavez, "rookie officer" John Doe and Sgt. Willis. In addition, he

may proceed on his conditions of confinement claims relating to inadequate food, lack of water and constant illumination. Further, he may proceed on his legal mail, access to courts and excessive force claims. His remaining claims are dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that the plaintiff's request to proceed in forma pauperis (Docket #2) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant "Psych Intern Kevin" is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the remaining defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided at 28 U.S.C. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that Warden of the RCJ shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each

time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. The payments shall be clearly identified by the case name and number assigned to this action.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2007.

BY THE COURT:

s/Lynn Adelman
LYNN ADELMAN
District Judge